# UNITED STATES DISTRICT COURT
## for the SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

| | |
|---|---|
| M. ANNE SIPAHIMALANI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *vs.* | ) CAUSE NO. 1:12-cv-892-DKL-SEB |
| | ) |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## ENTRY

Plaintiff M. Anne Sipahimalani applied for disability insurance benefits and a declaration of a period of disability under the Social Security Act in November 2007, alleging that she was disabled as of November 1, 2002.  Her insured status, *i.e.*, her eligibility for benefits, expired in September 2009.   In April  2010, the defendant Commissioner of Social Security finally denied her application.  She now brings this Cause for judicial review of that decision.

## Standards of review and disability

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).   Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).  If the evidence is sufficient for a reasonable person to conclude that it adequately supports

the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of an applicant's impairments shall be considered throughout the disability

determination process.  42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability.  20 C.F.R. § 404.1520.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id.*  At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled.  At the second step, if the applicant's impairments are not severe, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy.  20 C.F.R. § 404.1545.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then she is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will

not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.  The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a.  If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics.  *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993).  The grids result, however, may still be used as an advisory guideline in such cases.  20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist.  If the application is denied, the applicant may

request reconsideration review, which is conducted by different disability and medical experts.  If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1]  An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision.  If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review.  42 U.S.C. § 405(g).  If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

Ms. Sipahimalani was involved in a motor-vehicle accident in 1997 which injured her cervical spine, causing progressive degeneration of her cervical spine; worsening cervical pain, radiculopathy and numbness/tingling in her right arm; and headaches/migraines.  She alleged that these conditions, complicated by additional conditions, eventually caused her to cease working full-time in May 2002 and then rendered her totally disabled in November 2002.  She has undergone many procedures and treatments to relieve pain, including nerve-root and steroid injections at joints and spinal points, denervations, and medications.  Most of her treatments were administered by her primary-care physician, Dr. Kathleen Golightly, who started seeing her in early

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration.  20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*).  Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

2001.  Most of the evidence in the record consist of the doctor's office notes.  Ms. Sipahimalina was also examined by neurologists, Dr. Sartorius in May 2000 and Dr. Cummings in September 2002.  From December 2001 through July 2002 she was seen and treated by pain-management specialists, initially Dr. Sabatine, then Dr. Fitzgerald.  In April 2007, she saw Dr. Haddad, a pulmonologist, for insomnia.  In February 2008, on request of the state agency, Ms. Sipahimalani underwent a consultative physical examination by Dr. Baumberger and a consultative psychological examination by Dr. Ascough.

In April 2003, Dr. Golightly wrote a brief "To Whom It May Concern" letter about Ms. Sipahimalani's condition.  (R. 469).  On request of the state agency, Dr. Golightly also completed spinal-disorders (R. 305, February 2008), neurological (R.364, June 2008), and arthritic (R. 367, June 2008) report forms.  In September 2008, Dr. Golightly completed a "Medical Source Statement (physical)" report form, source unknown.  (R. 392.)

After ceasing full-time work in May 2002 and after her alleged onset date of November 2002, Ms. Sipahimalani had periods of part-time work, including from August 2002 to May 2003, as a teaching assistant (average of 10 hours per week), and from March 2004 to July 2005 as a store clerk/stocker (average 15 hours per week).  (R. 53, 180.)

After Ms. Sipahimalani's claim was denied by the state agency on initial and reconsideration reviews, she requested and received a hearing before an ALJ.  Ms. Sipahimalani and a vocational expert testified.  The ALJ issued a decision denying her

application.  When the Commissioner's  Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner.

The ALJ found that Ms. Sipahimalani last met the insured-status requirements for benefits on September 30, 2009.  Ms. Sipahimalani was 48 years old on that date.  At **step one**, the ALJ found that she did not engage in substantial gainful activity between her alleged onset date and the expiration of her insured status.  At **step two**, the ALJ found that she had severe impairments of obesity, mild sleep apnea, headaches, and mild multi-level cervical spine degenerative disc disease.  The ALJ found that Ms. Sipahimalani's additional impairments of restless-leg syndrome, gastroesophageal reflux disease, anemia, B12 deficiency, hyperthyroidism, and depression were non-severe, meaning they did not have more than a minimal effect on her ability to perform work-related functions.

At **step three**, the ALJ found that, before the expiration of her expired status, Ms. Sipahimalani did not have an impairment or combination of impairments that met or medically-equaled the criteria of any of the listing of impairments.

For the purposes of **steps four and five**, the ALJ first determined Ms. Sipahimalani's RFC.  He found that she had the capacity for sedentary work with the following specific capabilities and limitations:   occasionally lift and carry a maximum of 10 pounds; frequently lift, carry, push, and pull less than 10 pounds; stand and/or walk up to 2 hours in an 8-hour workday; sit up to 6 hours in a workday; frequently handle, finger, feel, and

7

reach in all directions except overhead; and occasionally reach overhead.  (R. 32.)  The ALJ found that Ms. Sipahimalani was not entirely credible in her descriptions of the degree and extent of her subjective symptoms and their resulting functional limitations.

At **step four**, based on the testimony of the vocational expert, the ALJ determined that Ms. Sipahimalani had the RFC to perform her past relevant work and, therefore, was not disabled.

**Discussion**

Ms. Sipahimalina argues several errors in the ALJ's decision.

**1. Failure to properly evaluate Dr. Golightly's medical opinions.**  Dr. Golightly, Ms. Sipahimalani's primary-care physician, produced five medical-opinion statements. While Ms. Sipahimalani states that the ALJ erred by failing to give the opinions controlling weight and by rejecting them outright, what she actually argues is that the ALJ erred by giving no weight to one and by failing to properly evaluate and/or articulate her evaluation of the other four.  The ALJ gave "no weight" to Dr. Golightly's earliest and briefest opinion, the April 2003 "To Whom It May Concern" letter, and gave "limited weight" to, but did not reject completely, the other opinions:

> Dr. Golightly's April 4, 2003 opinion is given no weight as it opines on an issue reserved to the Commissioner.  In addition, Dr. Golightly's June 19, 200[8], February 7, 2008, and September 5, 2008 medical source statements are given limited weight as they are not supported by her own clinical examinations, and appear to be based largely on claimant's subjective complaints.

8

(R. 36.)  The ALJ evaluated the reports and assigned weight to them as whole units, without distinguishing the separate opinions or findings on different subjects included within each report.

Dr. Golightly's April 2003 letter states that Ms. Sipahimalani has neck, shoulder, and arm pain secondary to her cervical disc herniation and that she has seen multiple specialists with minimal relief.  Dr. Golightly opines that Ms. Sipahimalani is "unable to work due to severe pain."  The letter describes her then-current part-time work as a tutor which includes flexible hours, a couch to lie on, and no lifting, standing, pushing, or pulling.  (R. 469.)  By assigning no weight to the entire content of this report solely because it includes an opinion on an issue reserved to the Commissioner — *viz.*, that Ms. Sipahimalani is disabled — the ALJ violated the Commissioner's own regulations and ruling:

> [O]ur rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.
>
> *     *     *
>
> [T]he adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

S.S.R. 96-5p.  20 C.F.R. § 404.1527(d).  Ms. Sipahimalani argues that, not only did the ALJ fail to evaluate Dr. Golightly's reserved-issue opinion according to the factors provided in 20 C.F.R. § 404.1527(c) and S.S.R. 96-5p, she failed to evaluate or consider the non-reserved-

issue opinions and findings in the letter.  She also argues that, if the bases for Dr. Golightly's reserved-issue opinion were not apparent to the ALJ, then the ALJ erred by rejecting it without re-contacting the doctor as required by the same regulations.  The Commissioner argues that the ALJ did evaluate the weight to assign Dr. Golightly's opinions according to the prescribed § 404.1527(c) factors as shown by her discussion in other parts of her decision.

The ALJ committed error by rejecting all of the opinions in Dr. Golightly's April 2003 letter, without evaluation, because one of those opinions was on an issue reserved to the Commissioner.  The ALJ did not say that she assigned no weight to all of the statements and opinions in the letter on the basis of inconsistency with other evidence or lack of supporting evidence, but solely because of the reserved-issue opinion.  In other parts of her decision, the ALJ did articulate her evaluations of the findings and statements in Dr. Golightly's treatment notes, but those evaluations do not apply to the doctor's 2003 medical opinion that Ms. Sipahimalani is unable to work due to pain.  There might be substantial evidence in the record to support rejecting Dr. Golightly' opinion that Ms. Sipahimalani is disabled, but the ALJ did not engage in that analysis.  Rather, the ALJ rejected and refused to weigh or consider the doctor's opinion on disability entirely because the issue of disability is reserved to the Commissioner.  That was legal error and it is significant because Dr. Golightly has a treating relationship with Ms. Sipahimalani for a number of years and has been the primary medical source of information on her primary impairments

of headaches and degenerative disc disease.  In addition, it was error for the ALJ to entirely reject and not consider or weigh the non-reserved-issue opinions and statements in the letter solely because of the presence of the one reserved-issue opinion.  That was overkill. The ALJ must articulate her evaluation of Dr. Golightly's disability opinion and any of the other statements and/or opinions in the April. 2003 letter that merit specific address.

The ALJ gave "limited weight" to Dr. Golightly's 2008 opinions in the four other reports (the spinal-disorders, neurological, arthritic, and medical-source-statement reports) because she found that they were not supported by the doctor's clinical examinations and appeared to be based "largely" on the claimant's subjective symptoms.  The contents of the reports consist of medical findings (*e.g.*, diagnoses, swelling, edema) and opinions, but the ALJ's evaluation was expressly limited to the medical opinions therein.  Many, if not most, of those opinions — *e.g.*, length of time Ms. Sipahimalani can sit, stand, and walk, (R. 306, 368-69, 392), ratings of pain levels, weakness, and tolerance, (R. 365); and need to alternate sitting, standing, and walking, (R. 306, 392) — are based on Dr. Golightly's own conclusions that Ms. Sipahimalani's reports of degree and extent of her symptoms and their resulting functional limitations are credible.  Credibility determinations are reserved to the Commissioner to make based on the record as a whole, including an applicant's hearing testimony, not based on only one source of information.  One physician's, even a treating physician's, opinion on a claimant's credibility can be based only on the information available to that one physician.  Records usually contain many reports by a claimant and

others of a claimant's symptoms, made over time and to different sources.  The ALJ will also have myriad other medical and lay sources to draw on to develop a broader and deeper picture of a claimant's credibility.  For these and other reasons, an ALJ need not accept or give special weight to a treating-source opinion that is based on the source's own judgment of the claimant's credibility.  *See White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005).

But, while the ALJ did not accord the medical opinions in these four reports controlling weight, neither did she assign them no weight, as she did with Dr. Golightly's April 2003 opinions.  Instead, she gave these opinions "limited weight."  The ALJ's decision demonstrates that she was well aware of Dr. Golightly's examining and treating relationship with Ms. Sipahimalina.  Her decision discusses and evaluates Dr. Golightly's supporting clinical and treatment notes in relation to the other evidence of record.  (R. 33-36).  And she discussed and evaluated Ms. Sipahimalina's credibility.  (R. 33-37).  Thus, the ALJ addressed the factors set forth in 20 C.F.R. § 404.1527(c) for the evaluation of treating-source opinions, found them not entitled to controlling weight for lack of supporting evidence and inconsistency with other evidence in the record, and, accordingly, she gave them less-than-controlling weight.  Because Ms. Sipahimalani did not identify any particular finding or opinion in these four reports which she challenges, the Court's review is general.  The ALJ accepted Dr. Golightly's diagnoses relating to Ms. Sipahimalani's headaches and cervical degenerative disc disease, but she did not accept the doctor's

opinions or credibility determinations regarding the severity or extent of Ms. Sipahimalani's symptoms or their resulting functional limitations.  Ms. Sipahimalani has not shown that the ALJ's evaluation of Dr. Golightly's medical opinions in the four 2008 reports was not based on substantial evidence in the record or was the result of legal error.

**2.  Credibility determination.**  Ms. Sipahimalani argues that the ALJ's credibility determination is not supported by substantial evidence in two respects.

**Part-time work.**  Ms. Sipahimalani argues that the ALJ's evaluation of her part-time work from 2003 through 2006 as inconsistent with her allegations of disabling symptoms is not supported by substantial evidence because (at least one of) the jobs accommodated her symptoms, she could not maintain the work, she was off-work for periods of time due to her symptoms, she was fired from one job because she was unable to work when scheduled and was often late, and, after two days on one job, she felt miserable.  Ms. Sipihimalani has not shown error.  The ALJ did not rely solely on Ms. Sipahimalani's part-time work in making his credibility determination and he did not reject her symptoms entirely.  Rather, in evaluating her credibility, the ALJ cited several factors beside her part-time work, including inconsistencies with Dr. Golightly's examinations and course of treatment; reports that she was receiving "significant relief" with injections and medications; the lack of evidence of significant worsening of her neck pain through clinical and radiographic findings and complaints; and her testimony that she experiences pain only when she overexerts herself.  (R. 35.)  The ALJ accommodated what she found to be

13

the credible extent of Ms. Sipahimalani's symptoms by restricting her to sedentary work with postural and overhead-reaching limitations.  (*Id.*)  The ALJ did not find that Ms. Sipahimalani's part-time work showed that she could perform substantial gainful activity without limitation or that it was the primary evidence inconsistent with her allegations of disabling symptoms.  The ALJ found that Ms. Sipahimalani's ability to sustain her part-time jobs for as long as she did was an indication, along with other indications, that her symptoms were not as severe and debilitating as she alleged they were because she would not have been able to perform even that part-time work if they were.  Ms. Sipahimalani has not shown that the ALJ's credibility finding lacks supporting substantial evidence because found her part-time work inconsistent with her symptom allegations.

**Lack of supporting objective medical evidence.**  Ms. Sipahimalani argues that the ALJ erred by discrediting her symptom allegations because of a lack of supporting objective medical evidence.  First, she argues that inconsistency with objective medical evidence is not determinative of credibility because the experience and functional limitations of symptoms are idiosyncratic.  20 C.F.R. § 404.1529; S.S.R. 96-7p.  She contends that the ALJ "failed to take into account that Plaintiff may experience her symptoms to a greater extent than other individuals and her symptoms suggest a greater severity of impairment than the objective medical alone."  There is no indication in her decision that the ALJ did not understand the standards for evaluating subjective symptoms, including the idiosyncratic nature of their experience and limiting effects.

14

In addition, rather than finding Ms. Sipahimalani's symptom allegations not credible for lack *objective* medical support, the ALJ wrote that "[t]he medical evidence and the claimant's reports of activities however, do not fully support" her allegations of disabling symptoms. The ALJ then reviewed the medical evidence, (R. 33-35), and found therein, in addition to objective diagnostic signs and findings, (1) "sparse reports of the claimant's complaints, and limited assessment and plan;" (2) statements that Ms. Sipahimalani's headaches were relieved with medication; (3) her last complaint of headaches occurred in 2005; (4) lack of reports of daily headaches; (5) statements that she was receiving significant relief with injections and medications; and (6) the absence of significant worsening of her neck pain "through either clinical findings, radiographic findings, or even the claimant's own subjective complaints," which she determined were inconsistent with Ms. Sipahimalani's symptom allegations, (R. 35). The ALJ did credit objective signs and findings when she accepted the diagnoses of severe headaches and cervical degenerative disc disease, but there is no indication in the ALJ's decision that she found Ms. Sipahimalani's allegations of disabling symptoms to be not entirely credible because of a lack of objective medical evidence substantiating the degree or extent of her experience of symptoms or their functional limitations.

While a lack of objective medical evidence substantiating the intensity and persistence of a claimant's symptoms cannot justify rejecting a claimant's symptoms, the disability standards provide that objective medical evidence "is a useful indicator to assist

us in making reasonable conclusions about the intensity and persistence of your symptoms", 20 C.F.R. § 404.1529(c)(2); "[t]he degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment" are strong indicators of credibility, S.S.R. 96-7p; and "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms" is a factor that an ALJ must consider in assessing credibility, *id.*  Ms. Sipahimalani has not shown error in the ALJ's citation of inconsistent medical evidence as a reason to discredit her symptom allegations.

Second, Ms. Sipahimalani states that she "clearly went to extraordinary measures to attempt to eliminate her symptoms" and points to the evidence of her nerve blocks, denervations, and medications.  Ms. Sipahimalina does not assert that the ALJ overlooked or ignored this evidence and, in fact, the ALJ's decision includes discussion and evaluation of these medical treatments.   In essence, Ms. Sipahimalina argues for an alternate interpretation and weighing of the evidence, but it is the Commissioner's duty and prerogative to weigh the evidence, not the Court's.  That the record can support alternate interpretations and evaluations does not demonstrate a lack of substantial evidence to support the evaluations that the ALJ made.

Third, Ms. Sipahimalina argues that the ALJ mistakenly concluded that Dr. Golightly's notes were the only evidence of her headaches and cervical degenerative disc

disease.  She points to Dr. Fitzgerald's report that a nerve-block injection failed to relieve her left-side cervical headaches, MRIs showing degenerative disc disease, Dr. Fitzgerald's diagnosis of degenerative disc disease, and CT scans confirming the disease as advanced. Dr. Fitzgerald's nerve-block report and the CT scan reports were included in Dr. Golightly's medical file submitted to the SSA and, while the report of Dr. Fitzgerald's diagnosis of degenerative disc disease is not cited as part of Dr. Golightly's office file, the ALJ agreed with the diagnosis and found that it was severe.  Ms. Sipahimalani has not shown how this mistaken attribution of the source of Dr. Fitzgerald's evidence calls the ALJ's decision into question.

Fourth, Ms. Sipahimalina states that the ALJ failed to "properly consider" all of the factors for evaluation of symptoms set forth in 20 C.F.R. § 404.1529(c)(3).  However, her argument is only conclusory:  she merely lists the factors without identifying the factor or factors that the ALJ did not consider or how a proper evaluation of the factors could only support a finding that she was entirely credible.  Thus, Ms. Sipahimalani has forfeited this argument.

Fifth, Ms. Sipahimalani argues that the ALJ failed to consider evidence that was favorable to her.  However, she identifies only her work history and her "attempts to continue to work" that were unsuccessful (presumably, her post-onset part-time work). As explained above, the ALJ's decision demonstrates that she was aware of and discussed both Ms. Sipahimalani's work history and her part-time work.  That Ms. Sipahimalani

wishes that the ALJ had evaluated the evidence differently does not prove that the ALJ failed to consider it.

Ms. Sipahimalani has not shown error in the ALJ's credibility determination.

**3. RFC finding.** Ms. Sipahimalani argues that the ALJ's RFC finding is erroneous for several reasons. The Court agrees. First, the ALJ either failed to consider or failed to articulate her consideration of the effects, singly or in combination, of Ms. Sipahimalina's non-severe impairments on her RFC. While the ALJ explained why she found the impairments to be non-severe — and Ms. Sipahimalani does not challenge those findings — the ALJ must still consider the effects of *all* of a claimant's impairments, severe and non-severe, on the claimant's residual functional capacity. 20 C.F.R. § 404.1523; S.S.R. 96-8p.

Second, the ALJ failed to articulate her evaluation of Dr. Ascough's medical opinion. Dr. Ascough, a clinical psychologist, examined Ms. Sipahimalani on request of the SSA and diagnosed depression and a mild memory deficit, and he assigned a Global Assessment of Functioning score of 55, indicating moderate severity of symptoms and/or functioning. (R. 317 *ff.*) The Commissioner argues that the ALJ discussed the agency consultants' evidence *en masse* and argues why a conclusion that Dr. Ascough's opinions do not show disability would be supported by substantial evidence. But the Court will not evaluate and weigh the evidence in the first instance or assume that the ALJ did. Dr. Ascough's opinion is significant enough that it should have been specifically addressed by the ALJ.

18

Third, the ALJ stated that she accommodated Ms. Sipahimalani's fatigue and sleep-apnea impairments by restricting her to sedentary work, but there is no medical or vocational basis in the record for finding that such a restriction is a sufficient accommodation of those impairments.  It is not self-evident that an individual would not suffer the effects of fatigue or sleep apnea in sedentary jobs or that an individual could sustain such full-time jobs while experiencing those symptoms.

Ms. Sipahimalani also argues that the ALJ failed to expressly discuss her ability to sustain work on a regular and continuing basis and points to evidence that she could not. There is no indication that the ALJ was unaware of the requirements for substantial gainful activity, the requirement that a claimant be able to sustain work in order to be not disabled, or that she was unaware of the evidence cited by Ms. Sipahimalani.  Rather, Ms. Sipahimalani argues again for a different evaluation of the evidence but it is the ALJ's responsibility to weigh the evidence and Ms. Sipahimalani has not shown that substantial evidence fails to support the ALJ's evaluation.

Finally, Ms. Sipahimalani argues that the ALJ failed to properly credit Dr. Golightly's opinions regarding her ability to use her arms and hands.  She points to evidence supporting her allegation of limitations in pushing, pulling, and finger manipulations.  Again, Ms. Sipahimalani actually argues for a different evaluation of the evidence and a different weighing of Dr. Golightly's opinion than the ALJ's, but substantial evidence can support different evaluations of the evidence.  It was Ms. Sipahimalani's

burden to show the ALJ's evaluation was not supported by substantial evidence and she failed to do so.

   **4. Vocational testimony.**  Ms. Sipahimalani argues that the vocational testimony was erroneous because there is an inconsistency between the functional restrictions found by the ALJ and the functional requirements of Ms. Sipahimalani's past-relevant jobs.  The Court agrees.  First, the ALJ limited Ms. Sipahimalani to no more than *occasional overhead* reaching, but the *Dictionary of Occupational Titles* defines both of Ms. Sipahimalani's prior jobs — page layout technician and graphic designer — as requiring *frequent* reaching. While the *D.O.T.* definition does not specify overhead reaching, there was an apparent inconsistency that required exploration by the ALJ and explanation by the testifying vocational expert.  S.S.R. 00-4p.  Ms. Sipahimalani's failure to raise the discrepancy at the hearing did not forfeit the argument now.  *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).  In addition, although the vocational experts stated generally that she would update the *D.O.T.* definitions as needed, there is no indication that she updated this particular criterion and she did not provide a reasoned resolution of the discrepancy for the record.[2]

---

   [2] Ms. Sipahimalani did not reply to the Commissioner's response to her second argument that she performed her past relevant jobs at a greater-than-sedentary level because she walked and/or stood for more than 5 hours of an 8-hour workday.  The Commissioner pointed out that counsel apparently misread Ms. Sipahimalani's job-history report which describes her walking .5 hours each day and standing .5 hours each day in those jobs.  The Court deems Ms. Sipahimalani to have dropped the argument.

**Conclusion**

The Commissioner's decision denying Plaintiff's claim for disability benefits will be **REVERSED** and **REMANDED** for reconsideration consistent with this Entry. On remand, the Commissioner shall:

**1.** Evaluate and adequately articulate her evaluation of, the medical opinion(s) and other evidence in Dr. Golightly's April 4, 2003 letter (R. 469). The Commissioner shall evaluate Dr. Golightly's opinion that Ms. Sipahimalani is unable to work due to severe pain according to 20 C.F.R. § 404.1527(c).

**2.** Re-evaluate and/or adequately articulate the evaluation of Ms. Sipahimalani's RFC as follows:

    **a.** Articulate the effect(s), singly and in combination, of Ms. Sipahimalani's non-severe impairments on her RFC.

    **b.** Articulate the evaluation of Dr. Ascough's medical opinion and findings and their effect(s) on Ms. Sipahimalani's RFC.

    **c.** Explain, with medical and/or vocational reasons, why a restriction to sedentary work will accommodate Ms. Sipahimalani's non-severe impairments of fatigue and sleep apnea.

**3.** Determine if there is a discrepancy between Ms. Sipahimalani's RFC's overhead-reaching restriction and the reaching criteria for her past relevant work as defined by the *Dictionary of Occupational Titles*. If there is a discrepancy, then determine whether expert

21

vocational opinion can resolve the discrepancy.  If not, then re-evaluate Ms. Sipahimalani's disability claim at step 4 and/or evaluate it at step 5, as necessary, based on the new evidence and opinions.

    **DONE this date:**  09/23/2013


_Denise K. LaRue_
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana


Distribution to all ECF-registered counsel of record _via_ ECF-generated e-mail.

22